The first case on the calendar is Seal Shield v. Otter Products and Tree Frog Developments, No. 15-55388. Counsel. Thank you, Your Honor. I'd like to reserve two minutes for rebuttal. I will try and help you. And may it please the Court. Your Honors, the principal issue on this appeal is whether the mark life proof is suggestive rather than descriptive as a matter of law and hence protectable because it is inherently distinctive. I want to emphasize at the outset that the case reaches the Court on a somewhat unique record. Cross motions on summary judgment based almost entirely on a set of stipulated facts or otherwise undisputed facts that were presented. More importantly, though, given the short shrift that I saw in the answer brief, there was a procedural stipulation. The procedural stipulation meant that this case is presented on pure question of law and fact. It stipulated the bifurcation of issues below, including discovery, and it was limited to the priority of use and grounds for cancellation. All other issues and proceedings were stayed pending resolution of this potential threshold issue. Okay, so let me just stop you there and make sure I understand the stipulation. Do you agree, since we have cross motions for summary judgment, that this is one of those rare cases where summary judgment may be granted in a copyright infringement case? Trademark infringement. Trademark, I'm sorry. Ultimately, I think that's my primary argument. Yes or no? No. Yes. Okay, yes. All right. Yes. But there is an alternate argument, and I'll get to that later. But I do believe this record, and I will argue that this record is sufficiently undisputed where a determination of suggestiveness can indeed be made as a matter of law. And part of that reasoning is more uniqueness of this record. We have identical marks. The parties are using the respective marks for similar goods to similar line of commerce and customers. There's no dispute regarding likelihood of confusion. Do we know that the marks are being used in a similar way, though? I didn't see evidence of how the mark was used in Clearcase's product, like a picture. Well, the mark in that part, Your Honor, is at the bottom of the packaging. It contains the common law TM symbol. And that was a feature of all of the products that the district court found were sufficient to establish proprietary rights. But as I understood it on the web page, at least the Amazon web page that was marked as an exhibit, it was used essentially as part of a bullet point list of how durable the product was. Correct. And that factored into the district court's analysis of analogous use. District court concluded that that was not sufficient to provide any prior rights, but instead focused, as this court's precedent requires, on the actual sale or shipment of the product in commerce. And that was undisputed. Again, the district court, where after finding, based on the controlling law of this court, that the sales of Clearcase were sufficient to establish proprietary rights, which would be priority of use, and although the court didn't find it would be sufficient grounds for cancellation, we submit it went astray on the next step, which was looking at suggestiveness. The court found- Can I follow up on my earlier question? You described it at the bottom, but do we have a picture in the record of how Clearcase used this mark? I didn't see a way to compare the two products. Your Honor, I can certainly cite the record, but the record of undisputed facts contains actually photographic depictions. You know what? I think I've now made a mistake. I think it's tree frog. It's tree frog. I'm sorry. I'm sorry. It's a little early in the morning. The problem that I have is I have Clearcase's. I don't have tree frog's. Thank you, Judge Warwick. I don't know how to compare the two packaging samples to look at them. We only have one, and we don't have the other, and I apologize for using the wrong name. No, that's fine. I'm probably going to use the terms interchangeably as well. Remember, the focus of this is priority of use. It is Seal Shield's or Clearcase's use that that's controlling. Plus, we have the stipulation that are based on the finding by the court that there is no question. The parties don't dispute the likelihood of confusion. But you're arguing that the mark is similar, and I think you're saying they're being used similarly, so they should be treated similarly, but we don't know if they actually are being used similarly. Well, I would submit to your honor that the stipulation of facts amply provide that. Which aspect of the stipulation of facts? Well, first of all, we know we have ours here, but more importantly, we have basically the agreement that there's a likelihood of confusion is really not in place, not contested here. But maybe when I say similar facts and similar products, we do have the USPTO, the registration, the principal register without secondary meaning, meaning it's inherently distinctive. And where is that fact? How do we know what was before the PTO? Where is that in the record that's on appeal right now of this summary judgment? The party stipulated to it. It's in the stipulation of facts that it was filed before the USPTO. It's on the principal register, and it was filed without requiring secondary meaning. It's in the stipulated facts. The stipulated facts in this case, this summary judgment motion, says that there was nothing about secondary meaning in the PTO application. If you could point me to that, that would be helpful. If it doesn't say that, it follows as a matter of law, because registration on the principal register means legally that the USPTO has determined that the mark is suggestive and does not require secondary meaning to be distinctive. In other words, it's inherently distinctive. It's just a foundation of trademark law. And necessarily the PTO would not have considered secondary meaning in registering the trademark? Not on a principal register. So can you point me to an authority that says what you're saying? You may be right. I just am not familiar with that principle. I think, I mean, with all respect, that's an elementary principle. I can certainly, I'll try to do it. I didn't cite it at that basic level. So let me ask you the thing that's troubling me. The tree frog mark is federally registered, and so you had a heavy burden to overcome. And the marks themselves, what's the evidence that you would point us to that this mark is descriptive as opposed to suggestive? What did you put in? Because the thing that I would have been interested in, I'm not a very imaginative person, I would have been interested in consumer evidence, which you didn't put in. I know it's not necessary, but what do I look to? Well, to the last point, Your Honor, we didn't put on any evidence of consumer perception. As you said, it's not required by this court, and that wasn't our theory of the case. And the district court ultimately agreed with us on that one. We're talking about priority of use. The bedrock principle of trademark law is first in time, first in right. And that's the grounds for establishing proprietary rights in a mark, and if they're established as a senior user, that in itself gives you the stand, for cancellation of the mark of the junior user, tree frog in this case. So how am I supposed to use my imagination then to determine whether it's descriptive or suggestive? Well, I would suggest to you a number of reasons. First of all, I would submit it's a fairly classic suggestive mark. Using the imagination test, I think we're all in agreement that's the primary test. First of all, let's look at the mark itself. Let's parse it. It's a coin term. There's no literal or commonly understood meaning of this arbitrarily combined word. Each constituent part has multiple meanings, so when you put it together, there's nothing that literally comes to mind. At bottom, what we have here is this catchy mark. It may suggest durability in general. It may suggest effectiveness, but it falls short of explicitly describing the exact features that are intended to be encompassed within that term. Waterproof, scratchproof, scratch-resistant, dustproof, those types of things. So when you look at the term lifeproof, and it doesn't explicitly refer to these features, there's basically a mental leap to associate all of these features with the creative mark. Whose mental leap is it? It's the consumer's. It's the consumer's. It's the consumer's. And there's no consumer evidence. It obviously took no mental leap for Judge Bentz-Avengo to determine that this was descriptive. So I don't know how my colleagues or how imaginative they are and whether they've found that there is some gap. Well, I would refer you then to this court's Salmando case, in which a finding of descriptiveness as a matter of law, just like we have here, was overturned by the court, saying for the very reasons Judge Warrick, you mentioned, that we can't do this necessarily unless the record is so overwhelmingly in favor that it supports the inference. But I'm back to Judge Friedland's point. And we have the prior registration of tree frog. And this court has held, specifically held in the Lahode case, that in the case of nearly identical marks used for similar products. But used in a similar way, I think is going to be the next thing you're saying. And that's the part that I'm having trouble with. But Lahode says nearly identical marks used for similar products, that's all, may be viewed in common like when the PTO has found one of those marks suggested. So here we fit right within this category. We have the identical marks as stipulated below. We have the same products as stipulated below. And in fact, what we have here is the opposing party itself is the filer. A lot of these cases involving the prior registrations are third parties. But in this case, it's a direct piece of evidence. This court's precedent, I believe, is equivocal on the effect of that. It says that in some cases, it may be enough in and of itself to support a summary judgment. In others, it may not. Which is why I say earlier that we believe the record would support a finding of suggestedness as a matter of law. But if not under Zabando, it should be reversed to remanded for trial by jury. And that would be where my client would put on the evidence of market penetration and consumer perception. How would you put on evidence of consumer perception if it hasn't been part of discovery thus far? I thought that wasn't evidence that's in the case right now. We bifurcated it. We put all the other issues. That's the importance of that procedural stipulation. So there'd be further discovery if we reversed here. There'd be further discovery still in the case? Further discovery and further proceeding. Again, this is a great threshold issue for determination by the court. It's pristinely presented. But the purpose of that stipulation below was, again, to determine how the rest of the case would proceed. I thank my colleagues for doing that because we were able to get the main issue before the court decided and now up before this court. But as I said before, we took the position and have litigated this consistently below and here, that market penetration is not an element of the determination of proprietary rights. And so it's not when we get to the jurisdictional issue on cancellation, it's a fairly simple analysis. We did not concede that market penetration does not exist, that we can't prove it. We deferred it. And because of that, the infringement actions on our side would remain alive and would provide the jurisdiction for the cancellation claim. We've got a minute and a half. All right. Hopefully I can use that. All right, Your Honor. Let's hear from Otterbeck. Good morning, Your Honors. May it please the Court. I'm Dale Sindaly, Counsel for Appellee Life Proof. This Court should affirm judgment for two independent reasons. First, appellant's use of the term life proof was descriptive, as Judge Bensabengo found. And second, in any case, appellant had not established that it had common law trademark rights, which are required to cancel life proof's presumptively valid federal trademark registration. I want to start first with the descriptiveness point, because that's the easiest way for this Court to just affirm. But I do want to clarify a couple of quick procedural things. This was their chance to have put in evidence. We had full discovery on the issues of priority, on the issues of whether they, and that included whether it was descriptive or suggestive, whether they could have proprietary rights sufficient to bring forward mark penetration. They had all that opportunity, and they came up with nothing. So what did you bifurcate? Maybe you may have a different understanding than your opponent of what the effect of the procedural order was. We bifurcated the issue of priority, and that dealt then necessarily with their ability to do they have a mark. And that meant if it's descriptive, but there's no secondary meaning, and they haven't argued that there's secondary meaning, then they don't have a mark. It also is they don't have a mark if they haven't established mark penetration either, because that's part of the test, and I'm going to get to that. The point is their ability to say that we have priority is dependent on them putting in evidence that they had a mark, and they didn't do that. Now let me get to the descriptive. You haven't answered my question. I'm sorry. I tried to. What was bifurcated here? What would happen if we reversed and sent it back to the district court in your view? Well, what would happen would be that there would somehow, though there would have to be some sort of a trial as to whether it would be. A trial on what? That's what I'm trying to understand. I don't know. I guess it would be a trial on the issue of likelihood of confusion and a trial on depending on how you sent it back, a trial on the issue of whether, in fact, it was suggestive or descriptive, though we don't think that. Do you agree with them there would be more discovery, or is the opportunity for discovery over? For discovery on priority, including mark penetration, would be over. But what about on consumer confusion? Consumer confusion, no one has dealt with that yet. But let's deal first. Our position is you obviously don't need to send it back to discover because this was a quintessential case of a descriptive mark. Why is that? Isn't it a little odd because I assume you think it's not descriptive on your product? Yeah, but there's a difference, and the difference is context. As Lahode said, context is key. Context is crucial in trademark cases. And the strange thing about what our opponents are doing here is they don't want this court to look at the overall context. They want you to have tunnel vision and just look at the packaging. Don't look behind the curtain and see what their own marketing materials were. But isn't part of the comparison of context the comparison to your product? And I'm very embarrassed that I got the names of the companies backwards earlier. But we don't have a picture of your product, do we? Yes, well, yes, you do. You at least have pictures of our uses, and that's in SER 68 through SER 75. There's lots of pictures of how we use LifeProof, which is using it as the primary house mark. We note that the burden was on our opponents. They certainly could have put in more evidence of how we use the mark. They chose not to. But it's undisputed that we are using, and we put in evidence, that we're using LifeProof as our primary name of our product, while they aren't. And was that true at the time that you registered the mark? I'll have to look at what you just pointed me to. But what is the date, and how does it compare to when you registered the mark? Well, when we registered the mark, again, they chose not to put in the record, the deposit copy. It's a matter of judicial notice. You could look for it if you wanted to. But they chose, and it's their burden to do so, not to put in our deposit copy of what we registered. But it's undisputed. Everyone agrees that we use LifeProof as our house name, as the name of our product. From the very beginning is your position? Yes, absolutely. It has always been LifeProof as the name of our product. They have always used ClearCase as the name of their product, the ClearCase for Kindle. And that's why the context is so important. Because if you were to look at, for example, their Amazon.com listing, which is particularly important in this case, because you cannot buy this product in brick-and-mortar stores. The only way a consumer could get it is through the Amazon.com listing, which they wrote. And that listing said, ClearCase for Kindle. That's the noun. That's the name of the product. And only, as His Honor pointed out, only in the section that they wrote that said, Product Description, is there a reference to LifeProof along with similar references to Transparent Design, SplashProof, and One Everyday Case. They're advertising the same way. The only ad that they had that mentioned LifeProof said, Crystal Clear Design, LifeProof Protection. A classic descriptive use. But it's on the packaging when someone buys the product. It is when you eventually get the product. It's on the packaging. But then the Hoover case is helpful here that we cited in our briefs. Because the packaging, it shows ClearCase for Kindle in very big letters at the top as the obvious noun source identifier. It's only at the bottom does it say LifeProof. It does say a TM, which I will get to. But in that context, as the Hoover case said, when you have a big housemark and a smaller tagline associated with it, it's more likely to be seen, as was true here, as a laudatory descriptor as opposed to something in terms of origin. Now, they're making, and that's why Judges Bench, Savango, perfect. I'm looking at the pictures, at least some of the pictures on the SCR pages you pointed me to. And they have LifeProof like on the top of a computer screen, or I can see part of what looks like the case for a phone. But do we ever see whether you have another name on your package? Let me stop with that. Do we have a picture that shows that there's no other name on your package when you actually look at the comparison product? It was their burden if they wanted to put in more pictures of what our product looked like in the record. They didn't do that. Can I follow up on that? So, they say we can derive something from the fact that your mark was registered. We can assume from that. Why doesn't that shift the burden back to you to say, no, no, no, it's not something we can presume because actually they're used really differently? Because they misunderstand the Lahodi case that they rely on. The Lahodi case simply says that in certain circumstances you may be able to look at the evidence that there was another registration. But it cautioned, it goes on to caution that the facts may be distinguishable. And it emphasized that context is key. And it's been undisputed, it's in all the papers undisputed that we use LifeProof as the primary name of our product. There's absolutely nothing in the record that says that we use it with any other phrase. And it's in the record 100% that we use it as the primary name. It's equivalent to their use of ClearCase. And that's why the Federal Circuit in Towers completely rejected the same argument that they're making here. Because it's not apples to oranges. Because in that case where someone was trying to say, well, the other side got the professional portfolio registered. And so, therefore, that means that that must be suggestive. And I want to say that my professional portfolio system, therefore, should also be entitled to that. But didn't the court there actually have both products and compare them? I mean, I don't think that court decision discusses whose burden it is once we have a registration and have to decide what that registration does to whose burden it is to show difference under Lahodi. But the burden is always on them first to come up under Solitex with evidence when someone's moved for summary judgment. The burden is on them when there's a strong presumption of validity. And to be very clear, Your Honor, it is absolutely undisputed. No one is denying in the record that we use LifeProof as the name of our product, as its primary mark, and that they use it as a tagline. You don't need to see anything. If you did, they should have put something in. But you don't need to see anything. It's completely agreed that that's the use. And in light of that use, as the Towers case said, it's distinguishable because we're dealing with an apples and oranges situation. There's a different commercial impression, as the Hoover case and other cases that we have cited, from something as a tagline versus not. And the difference is that a consumer should realize that a tagline is more likely to be descriptive? That's right, because as the Hoover case said, it's more likely to be seen as a laudatory, you know, clear case for Kindle, LifeProof. That helps to describe, as the district court found, what the characteristics are. And remember, this is not done in a vacuum. This is done in the context, again, context is key, of the consumer knowing what it is that they were purchasing, and that it was this type of protective case. So we're here on summary judgment, and so the test is whether there's any disputed question of fact. And we're supposed to apply this imagination test, right? And so if I find that this mark is somewhere in the netherworld between descriptive and suggestive, that it took me a little while to figure out exactly what LifeProof was supposed to mean here, does that create the question of fact that means that the case has to go back down? What should I be looking at? No, Your Honor. First off, it was the burden on them. They could have put in, they didn't have to, but if they really wanted to create a triable issue of fact as to what consumers would think, there's ways trademark lawyers do that. There's consumer surveys. There's anecdotal evidence on the Internet. There's linguists. There's absolutely nothing that they have put forward that would indicate that there would be a mental impression that would be to the contrary. And when you look at courts, I appreciate that, and this court's acknowledged that there's sometimes a fine line between suggestive versus descriptive, but when you look at cases like escape from the ordinary, micro-precision, student lifeline for a taxi service for intoxicated students, which was found to be descriptive. Do you want us to think that the same word is not descriptive when you use it? Because we are using it in a different way as the name of the product, one, and, two, the other difference is the Lahoti teaches us you look at the context, and the context of their advertisements, the context of their website, communicates to consumers much more information than the pure placement on the packaging. Our belief is that that's enough in light of the learnings of Tower and Hoover where you have the connection of a big housemark with the smaller descriptive kind of auditory tagline when you know that this is a case that you're buying to protect your electronic device from things. We think that that would be enough, but this court's reasoning should not be such tunnel vision because you're allowed and instructed in Lahoti to look at the overall context where they go on and on to describe that light proof is in fact something, as the Norm Thompson case said, to describe the qualities of the product. Judge Bencivengo got it right, and I also want to say I realize that my time is fleeting here, but they have to win on both points. They'd have to win that the judge erred in finding that it was descriptive, but they also would have to win on the idea that mark penetration isn't required for them to establish a proprietary right here, and they just can't do that. To be clear, they're confusing the idea that to register a mark it's a lesser standard because there's a public policy towards registration. Registration is good. Everybody knows about something when they've registered a mark, but when you're trying to cancel a mark, the law is clear that you need to, and the Herb Cope case, as Judge Bencivengo cited, you need to show that you have a proprietary right, and to have a proprietary right in this circuit, you either look under chance for the totality of the circumstances to see if you use the mark in a sufficiently public way to identify or distinguish the marked goods in an appropriate segment of the public mind. In other words, there has to be some impact on consumers, which again under Celtic they had the chance to prove, absolutely did not, and then similar to that is the mark penetration test, which has been the standard for district courts to be able to assess whether someone actually has a proprietary right, and it's the same kind of reasoning as in chance, which is it's not just any old use. It has to be use that actually makes a commercial difference. It creates an impression on people, and that's why so many district courts, Glow, Optimal Pets, Credit One, Gold Club, Wine Group, all of them follow this idea, which is that the party asserting common law rights must not only establish that it's the senior user, but also show that it has legally sufficient market penetration in a certain geographic area to establish those trademark rights, and they have made, that was part of our whole brief, that was part of our whole point. They didn't establish market penetration that would give them, akin to standing, the kind of proprietary right that's required in order to bring a cancellation claim, and tellingly, they have not tried to argue that they have. My light is on. Your time has expired. Thank you very much. You should have reserved three minutes. You've got about a minute and a half left. Yes, sir. Basically, let me try to do some bullet points here. Your Honor, I would cite you to the record docket number 37-1, the declaration of Julianne Debler has attachments to it of the products in comparison and has displayed. My apologies for not having that at my fingertips in the beginning. I do want to make a point on the tagline issue. Do you know the ER number of that? I don't. I don't. I just was able to pull up the docket number. On the tagline issue, this really, you know, it's not exactly, it doesn't fit the description of a tagline. That's usually a clever slogan or phrase. It's more of a product identifier. It's more like Apple, iPhone. Why wouldn't life proof be an example of a phrase that explains what this product will protect? I'm not saying that it isn't. I'm just saying that it functions more as a product identifier than it does as what's traditionally known as a tagline. It is separate. Both of them bear the TM symbols. The court's held a long time ago, long precedent, that there can be two trademarks on the same product. And, of course, the Apple iPhone has two trademarks. It's just all a question of whether the mark used as a tagline or whatever else is predictable or protectable. Let me say one other thing about what happens next. If the court reverses and it's only found either by this court or below that the mark is canceled, basically what happens, we'll go into a fairly standard trial on the respective rights of the parties under their common law trademarks. And significantly what would happen at that point is that the, first of all, that tree frog would be divorced of the advantages and the presumptions it would have. We would have a much longer period of time to measure the extent of market penetration, secondary meaning if required. And that is why that stipulation was entered. It wasn't that we took the position that market penetration wasn't required. The court agreed with us below. This court's precedent holds that in an unbroken line of authority. If we have to prove market penetration, it would be part of the infringement analysis on retrial. Thank you very much. Thank you very much. Thank you both for a very fine argument. The case just argued is submitted.
judges: Tallman, Friedland, Orrick